```
                    UNITED STATES DISTRICT COURT
                            FOR THE
                       DISTRICT OF VERMONT


     UNITED STATES OF AMERICA  *
                V.             *      Case No:  2:19-cr-66-1
     JEREMIAH RUHL             *




             CONTINUATION ON VIOLATION OF CONDITIONS OF RELEASE
                            AUGUST 2, 2021
                         BURLINGTON, VERMONT



     BEFORE:
          THE HONORABLE WILLIAM K. SESSIONS III
          District Judge

     APPEARANCES:

          Joseph Perella, Esq., Assistant United States
     Attorney, P.O. Box 570, Burlington, VT  05402-0570;
     Attorney for the Plaintiff.

          Michelle Anderson Barth, Esq., 182 Main Street,
     Burlington, VT  05401; Attorney for the Defendant.



     Court Reporter:  JoAnn Q. Carson




                    CAPITOL COURT REPORTERS, INC.
                         P.O. BOX 329
                  BURLINGTON, VERMONT  05402-0329
                        (802/800) 863-6067
              E-MAIL:  Info@capitolcourtreporters.com
```

1           THE COURT:  Good afternoon.

2           DEPUTY CLERK:  Your Honor, this is criminal
3   number 19-66, defendant number 1, United States of America
4   versus Jeremiah Ruhl.  The Government is present through
5   Assistant United States Attorney Joseph Perella.  The
6   defendant is present with his attorney Michelle Anderson
7   Barth.  The matter before the Court is a continuation on
8   violation of conditions of release.

9           THE COURT:  All right.  This is a continuation
10  of the violation hearing.  In addition, the Court has
11  received a non-compliance summary.  The allegations are
12  that, first of all, he has not been attending treatment
13  and, second, that he was stopped by a police officer for
14  suspended license and did not report that to the probation
15  officer immediately.  Now I'm wondering if there's a
16  violation -- violation charges in addition to the
17  violations to which he has admitted.  Were there any
18  specific charges?  I don't have that.

19          MS. LAPIERRE:  Yes, Your Honor, there was a
20  second violation report filed on July 29, 2021.  Do you
21  want a copy of that, Your Honor?

22          THE COURT:  Okay.  So can I see a copy of that?
23  Well, no, this I have.  The question is whether there
24  actually was specific charges.  This is just a summary.  I
25  mean basically the question is whether there are

1   additional conditions of supervision that he allegedly has
2   violated.  You spell it out here, but I didn't actually
3   have the specific charges.
4           MS. LAPIERRE:  Okay.  They are listed just on
5   the top of that sheet.  The attending treatment condition
6   and the conditional part requiring to report law
7   enforcement contact and not violating state or local laws.
8           THE COURT:  Okay.  Well I guess maybe we're not
9   speaking the same language.  Ordinarily you get a petition
10  for a violation of supervision.  It's a separate document
11  spelling out exactly what the allegations are.  This
12  non-compliance summary is a description of exactly what
13  was charged, but it's not the same kind of document.
14          MS. LAPIERRE:  I'm sorry, Your Honor.  I think
15  that would apply to post conviction violations.  With the
16  pretrial conditions that would be the only report that
17  would be submitted.
18          THE COURT:  Oh maybe you're right.  You're
19  right.  That's correct.  All right.  Ms. Barth, have you
20  received a copy of the non-compliance summary?
21          MS. BARTH:  I have, Your Honor.
22          THE COURT:  And I guess there is no separate
23  document.  That's post conviction.  Specifically there's
24  two allegations.  The first is that he was operating a
25  vehicle, stopped by law enforcement, didn't contact the

1    probation officer for a very significant period of time in
2    violation of the conditions, and, second, that he has been
3    terminated from treatment based upon his non-compliance.
4    So do you understand that?
5            MS. BARTH:  Yes, Your Honor.  I received a copy
6    of the non-compliance summary.  I have reviewed it with
7    Mr. Ruhl.  He's prepared to admit those violations and
8    offer an explanation for them and propose his continued
9    release.  He waives any right to present witnesses and all
10   of the rights that are attendant to such a hearing.
11           THE COURT:  Okay.  All right.  Mr. Ruhl, my
12   understanding is that you wish to admit that in fact you
13   violated conditions of supervision of release actually
14   technically because, number one, you didn't report the
15   contact with law enforcement for a significant period of
16   time and that, second, you've stopped attending
17   treatment --
18           THE DEFENDANT:  Yes.
19           THE COURT:  -- is that correct?
20           THE DEFENDANT:  Yes, Your Honor.
21           THE COURT:  And do you wish to admit those
22   violations?
23           THE DEFENDANT:  Yes, Your Honor.
24           THE COURT:  Do you understand you have a right
25   to a full hearing?  At that hearing you have the right to

1    the assistance of counsel for your defense, the right to
2    see and hear all witnesses, have them cross examined in
3    your defense, the right on your own part to decline to
4    testify unless you voluntarily chose to do so, the right
5    to the issuance of subpoenaes to require the attendance of
6    witnesses to testify in your defense, the right to
7    testify, the right to present evidence, but that if you
8    admit to the violations, you would waive your right to a
9    hearing.  The other rights I've just explained.  There
10   will be no hearing.  I'll accept your admission and then
11   address the question of detention.  Do you understand
12   that?
13           THE DEFENDANT:  Yes I do.
14           THE COURT:  And is it your wish to admit that
15   you violated those conditions?
16           THE DEFENDANT:  I did.  Yes.
17           THE COURT:  All right.  The Court will accept
18   your admission, find that you violated conditions of
19   supervision, add it to the other violations as well, and
20   let me ask, first of all, what the Government's
21   recommendation is at this point.
22           MR. PERELLA:  Your Honor, the Government concurs
23   with Probation's recommendation that the defendant be
24   detained.  We understand from the Probation Office that
25   the PSR draft is in process now, but the final PSR should

1  be done in time for the October sentencing.
2          THE COURT:  Okay.  All right.  Ms. Barth.
3          MS. BARTH:  Thank you, Your Honor.  So I asked
4  Jed why he missed MRT on the dates listed in the
5  non-compliance summary and the first date, which was June
6  30th, and when I talked to Jed he said to me the reason I
7  missed MRT is because I was on the phone with you and that
8  is true, Your Honor.  He was on the phone with me on June
9  30th in the afternoon.  If the Court recalls, the day
10 after, July 1st, was the day that we had the initial
11 hearing on the original violation report.  We were on the
12 phone for about 45 minutes.  I didn't know that he had
13 MRT.  He lost track of time.  As soon as he got off the
14 phone he logged into MRT.  He was 10, 15 minutes late and
15 because of that, as we've learned when other drug court
16 participants log in late to MRT, they are not allowed to
17 participate in group.  After that Jed didn't hear from
18 Christine.  In the past whenever he's missed MRT Christine
19 calls him and emails him to check on him and to find out
20 why he missed MRT.  He thought when she didn't act in that
21 way here that he had been kicked out of MRT altogether.
22 He logged in again at the next group and he wasn't
23 permitted in to -- to enter the group and he didn't know
24 why.  Now he did not reach out to Christine to ask about
25 it.  Given her conduct in the last period of time in which

1  he missed MRT he thought that meant the termination of his
2  participation in drug court that also meant the
3  termination of his MRT, and Jed may have some additional
4  things to add to that, but after speaking with Probation
5  he did reach out to Christine.  He's spoken to Christine.
6  Christine has indicated to him that Howard Center would
7  have him back if he does another assessment.  He did not
8  schedule that assessment because Christine said she needed
9  to speak with Shawna before conducting that assessment
10 with him, but it does appear that he would be able to
11 enter back into MRT through the Howard Center once that
12 assessment was completed.
13      Now I think it's important to focus on some of the
14 positive things.  Jed has complied with curfew.  He has
15 gone for drug testing three times a week which is not an
16 easy thing to do with a busy schedule and the health
17 concerns that he has, and he's provided undiluted samples
18 on each occasion, and most importantly those samples have
19 all been negative.  He has these ongoing health issues.
20 At the last hearing the Court wanted to review his medical
21 records, and as the Court probably realizes from the
22 volume, nearly 200 pages, that he has a significant health
23 crisis that he was dealing with and still is to a certain
24 extent.
25      I think it's also important to focus on another

1    positive aspect.  When he was officially terminated from
2    the Howard Center prior to that moment when he only
3    thought he had been terminated he applied to the VA Center
4    for treatment through their program.  In fact, he has an
5    assessment scheduled for tomorrow.  So he has taken his
6    treatment seriously.  When he believed he had been
7    terminated from the program he went out on his own, not at
8    the direction of Probation, to find a program that would
9    fit his needs, and given that he's a veteran the VA is a
10   good choice.  That also happens to be something that
11   Christine has thought would be a good program for him as
12   well given his military service and background.
13          Now, Your Honor, circling to the additional
14   violation, that is the driving with the suspended license,
15   the interlock device on his car was related to a DUI of
16   some sort that predated his participation in the drug
17   court program.  That interlock device was inactive in his
18   car because, as the Court may recall, when lifesaving
19   measures were taken on June 11th EMT's broke his ribs and
20   so he was unable to breathe into the device.  Now because
21   he's been under a colossal amount of stress related to his
22   health and trying to make all of his appointments and be
23   as perfect as he can be he did not immediately seek a
24   medical waiver.  So at the time when the officer pulled
25   him over with the interlock device activated the officer

1  informed him that all he needed to do was get a doctor's
2  note.  Now Jed waited four days before he contacted
3  Probation in part because he wanted to solve the problem I
4  believe, but he only waited four days.  While he should
5  have contacted Shawna immediately this wasn't the case, as
6  we've seen with other defendants, where Shawna learns of a
7  law enforcement contact, needs to confront that person,
8  and then the person fesses up about it.  He volunteered
9  it.  He just didn't do it as quickly as say you or I
10 would.
11         His sentencing is in October and I know that his
12 progress in drug court was spotty, but he has demonstrated
13 that he can follow the rules for some period of time.  His
14 sentencing is not six months from now.  It's just a couple
15 of months from now.  All other indications would seem to
16 support the conclusion that he is sober.  He's going twice
17 weekly.  He's observing his curfew and he's working and
18 he's been diligent about his medical care and regular
19 communication with his doctors.
20         So our proposal is that he remain released subject to
21 conditions and on the condition that he rejoin Howard
22 Center or the VA program, and he's shown that he's capable
23 of doing such things for a period of time.  If he's able
24 to do that, it would be helpful for him at sentencing
25 because he can demonstrate to the Court look what I'm able

1  to do and look what I have done, and that's something I
2  know he wants to prove to you.
3        THE COURT:  All right.  Do you wish to say
4  anything at this point?
5        THE DEFENDANT:  I think Michelle did a really
6  good job and spoke to what I wanted to speak.  When the
7  officer pulled me over I had already contacted DMV and
8  filled out the application for the medical waiver.
9  Because of the pneumonia I couldn't blow through the
10 device and the only part that made it an issue was that I
11 didn't get the note from the doctor.  I forgot to have the
12 doctor e-mail the note to the DMV.  It was just -- other
13 than that there wasn't any -- everything would have been
14 all right.  So I'm sorry for that.
15       THE COURT:  And not attending treatment.
16       THE DEFENDANT:  I should have called Christine.
17 It just her not contacting me and being kicked off group
18 two weeks in a row it just really added up to that I
19 wasn't in MRT any more, and I was -- admittedly I was a
20 little -- I wish she had -- I thought that was the case.
21 I wish that she had called me to tell me I wasn't in MRT
22 rather than just, you know, keep kicking me off from
23 group, and immediately when I thought that I was not in
24 MRT any more I called the VA and did the intake interview,
25 and tomorrow I'm supposed to meet with a psychiatrist and

1   I have two different appointments tomorrow with the VA.
2   So I was, you know, taking counseling seriously and I
3   think it's a great program.  It's a veterans helping
4   veterans program.  So I would be a part of that program
5   and MRT once I do the new intake for the assessment.
6           THE COURT:  Okay.  All right.  Anything else?
7           THE DEFENDANT:  No, Your Honor.
8           THE COURT:  Okay.  Mr. Perella, do you want to
9   respond to that?
10          MR. PERELLA:  Your Honor, it's just sad with Mr.
11  Ruhl.  On the one hand certainly it's good he's been
12  testing negative, but for quite some time we have had
13  strings of violations followed by strings of excuses of
14  why his violations were justified, and in the end it seems
15  like Mr. Ruhl just cherrypicks which conditions he wants
16  to comply with and which he ignores.  In the end, Your
17  Honor, the Government defers to your judgment.
18          THE COURT:  Obviously this is a complex case and
19  Mr. Ruhl is a complex person.  We have a pattern.  He's
20  been engaged in the drug court for many months, well over
21  a year, and there's a general pattern that he will
22  collapse in pretty dramatic ways, and in particular when
23  he has not been engaged -- actively engaged in treatment
24  it's almost inevitable that eventually it's going to catch
25  up to him and he's going to collapse, and there was the

1  one time, you know, he was caught in a tree, and this time
2  he collapsed to the extent that he engaged what appears to
3  be in significant drug activity and Narcan was used and he
4  was able to survive with the assistance of Narcan, but he
5  also was found in possession of heroin, and the officer
6  found a bag of heroin in his pocket.
7      This is a person who for some reason doesn't quite
8  understand the full complexity of his addiction, and I
9  appreciate the fact that he's done really well in terms of
10 using drugs for this last period of time, but he's also
11 engaged in conduct which I think is just extraordinarily
12 difficult and troublesome for him and that's not engaging
13 in treatment.  I appreciate the fact that perhaps
14 Christine would call him when he missed MRT, but he knows
15 how to call Christine.  He's talked with her countless
16 times per week for well over a year.  This was, again,
17 another pattern of deflection that Mr. Ruhl engaged in.
18      Now I think looking from the macro perspective that
19 Mr. Ruhl has made a lot of progress.  From where he
20 started he has made a lot of progress, but now we're faced
21 with a situation of just over a month ago he was on
22 death's bed.  He was brought back to life because of what
23 appears to be the use of drugs, and, you know, I looked
24 through the medical records to see any evidence of this
25 being struck with lightning so he may be confused, et

1  cetera.  There is none of that.  This is what appears to
2  be a significant medical problem because of the use of
3  drugs.
4      Now when you add his history to the fact that he has
5  essentially refused to go to treatment over the past month
6  that's just extraordinarily dangerous.  That's a molotov
7  cocktail.  Again, I think that he has made a lot of
8  progress and I think that should be reflected in his
9  sentencing and in his sentencing hearing, and I'm going to
10 ask the probation officer to expedite the presentence
11 report so that this gets resolved quickly.  I think two
12 months is well too long, but at this particular point, in
13 light of his apparent refusal to engage in treatment and
14 his really subversion of the conditions of his release, I
15 think there are no conditions or combination of conditions
16 which could assure that he would be safe to himself and in
17 particular safe to others.  So I'm going to order that he
18 be detained.  I'm going to try to expedite the sentencing
19 process so that he comes back quickly and we try to figure
20 out exactly what is the ultimate disposition.  Yes.
21         MS. BARTH:  Your Honor, would you consider
22 allowing him to self report in a day?
23         THE COURT:  I don't think that would be wise at
24 this point.
25         THE DEFENDANT:  Your Honor, I have a job that I

                                                                14

1   have been working on this morning and the woman is older.
2   If I don't show up there, it's -- her whole yard is taken
3   apart.  Her fencing.  My tools are there.  I also have a
4   vehicle parked out here with -- I'm not going anywhere.
5   I'm not going to use drugs.  I just -- if you would really
6   let me take care of these things.
7           THE COURT:  Okay.
8           MR. PERELLA:  I defer to the Court.
9           THE COURT:  All right.  I'm going to order that
10  you report to the Department of Corrections at 3 o'clock
11  tomorrow.
12          MS. BARTH:  Thank you, Your Honor.
13          THE COURT:  That will give you 24 hours to get
14  things in shape.
15          MS. BARTH:  Thank you, Your Honor.
16          THE COURT:  Okay.  Thank you.
17          [Adjourned at 3:30 p.m.]
18
19                  C E R T I F I C A T I O N
20     I certify that the foregoing is a correct transcript
21  from the record of proceedings in the above-entitled
22  matter.
23
24
25                                                  *JoAnn Q. Carson*

1  _____                    _____

 2  February 4, 2022                         JoAnn Q. Carson

 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**Capitol Court Reporters, Inc. (800/802) 863-6067**