```
 1                UNITED STATES DISTRICT COURT
                            FOR THE
 2                      DISTRICT OF VERMONT

 3


 4   _____

 5   United States of America

 6
            vs.                   Case No. 5:19-cr-66-1
 7
     Jeremiah Ruhl
 8

 9   _____


10              Violation Hearing taken on Wednesday,
                October 14, 2020, 1:40 p.m. to 2:00 p.m.
11

12   APPEARANCES:

13   THE HONORABLE WILLIAM K. SESSIONS, III

14   JOSEPH R. PERELLA, ESQ., U.S. Attorney's Office, Federal
     Building, 11 Elmwood Avenue, Burlington, Vermont
15   05402-0570, appeared via telephonic Zoom on behalf of
     the United States of America;
16
     STEVEN L. BARTH, ESQ., Federal Public Defender's Office,
17   126 College Street, Suite 410, Burlington, Vermont
     05401, appeared via Zoom on behalf of the Defendant;
18
     MICHELLE ANDERSON BARTH, ESQ., P.O. Box 4240,
19   Burlington, Vermont 05406, appeared on behalf of the
     Defendant.
20

21   COURT REPORTER:  Deborah J. Slinn, RPR, CSR

22              CAPITOL COURT REPORTERS, INC.
                         P.O. BOX 329
23             BURLINGTON, VERMONT 05402-0329
                       (802) 863-6067
24                     (800) 863-6067
          E-MAIL:  Info@capitolcourtreporters.com
25
```

1       (COMMENCING AT APPROXIMATELY 1:40 p.m.)
2           THE CLERK:  Your Honor, this is Case No.
3   5:19-cr-66, Defendant Number One.  The
4   United States of America versus Jeremiah Ruhl.  The
5   government is present through Assistant United
6   States Attorney Joseph Perella who is participating
7   by telephone.  Also present in the courtroom is the
8   Defendant with his attorney Michelle Anderson
9   Barth.  Also present by telephone is attorney
10  Steven Barth.  And the matter before the court is a
11  Violation Hearing.
12          THE COURT:  Well, my understanding is that
13  we're having a little bit of difficulty with Zoom.
14  I can actually see both counsel, Mr. Barth and
15  Mr. Perella.  And I also can hear both.  I think
16  that you can hear me, but you can't see the
17  courtroom; is that right?
18          MR. PERELLA:  That's correct, Your Honor.  At
19  least I can't from Rutland.  Maybe because I'm in
20  Chuck Peruso's old office.
21          THE COURT:  Well, that could be.  Right, and
22  yeah.  He did have some difficulties with
23  Burlington, as I recall.
24          Having said that, I think we can proceed in
25  light of the fact that both counsel are here for

1       Mr. Ruhl.
2           Any objection to proceeding with this limited
3       problem with Zoom?
4           MS. BARTH:  No, Your Honor.
5           MR. PERELLA:  No, Your Honor.
6           MR. BARTH:  This is Steve Barth.  Mr. Perella,
7       I can't see you, but every once in a while you
8       break up, so if I don't answer you right way it's
9       only because --
10          THE COURT:  Okay.
11          MR. BARTH:  -- occasional --
12          THE COURT:  Well, it's unclear which Barth is
13      taking lead in this particular hearing.  I'm sure
14      you must have arranged --
15          MR. BARTH:  Pretty clear to me --
16          THE COURT:  Yeah, right.  All right.
17          So Mr. Ruhl was at drug court.  He admitted to
18      use of cocaine.  He also had difficulties in
19      reporting for testing.  And I then found that he
20      violated his terms of release, conditions of
21      release, ordered that he be detained.
22          My question is, is there some resolution in
23      regard to Mr. Ruhl's situation?
24          MS. BARTH:  Your Honor, we hope so.  Mr. Ruhl
25      has taken a great deal of initiative since the last

1    time we met.  Mr. Ruhl has been introspective and
2    looked for the reasons why he made such serious
3    mistakes here.
4        He took initiative in finding a sober living
5    environment which would take him away from his
6    camp.  It would surround him with people who are in
7    recovery and offer some oversight, some
8    accountability and some focus.
9        As Your Honor may recall about a month and a
10   half ago he was diagnosed with ADHD.  And he has
11   never taken any sort of medication for it.  I think
12   we've seen some of the symptoms of that in drug
13   court.  He has some distractions.  He's jumped from
14   employment to employment.  And he is hardworking
15   and smart; he sometimes lacks focus.  And that lack
16   of focus I think has interfered with his success in
17   the program.
18       First Step Recovery has a bed available for
19   him today.  Mr. Ruhl on his own put down a $500
20   deposit to reserve that bed availability.  I've
21   talked to Shauna LaPierre about the program.  It's
22   a program that offers some oversight, some
23   accountability and would make continued
24   participation in drug court more rigorous because
25   it includes 30 days of meetings at the outset.

1          So if Your Honor were to agree with the
2    release plan and allow him to remain in the drug
3    court program he would be required to go to 30 days
4    of meetings, he would check in to First Step
5    Recovery today.
6          I spoke with First Step today, Mike Prescott,
7    who screened Mr. Ruhl.  So we have 30 days of
8    meetings.  After that he would have three mandatory
9    meetings with the house weekly where he checks in
10   with the other members of the program as well as
11   the more senior staff to go over his progress to
12   see what troubles he is having.
13         I've spoken to -- well, corresponded with
14   Christine Hayner and it was like a treatment
15   through MRT would be good for him, continued
16   treatment in MRT would be good for him.  He has had
17   periods of success where as Your Honor has noted he
18   has done extraordinarily well.  Based on those
19   periods of success I think that's why probation is
20   on board with his continued participation in the
21   program as well as continuing here at the Howard
22   Center.
23         Also, he would be subject to treatment UAs at
24   random through the First Step Recovery program.
25   And they have a zero tolerance policy.  So if he

1  fails any drug testing there he will be immediately
2  kicked out of the program.  He can remain in the
3  program for the duration of drug court.
4      If Your Honor sees fit and wants to impose a
5  stricter curfew, the house already imposes a curfew
6  between 7:00 a.m. in the morning and 10:00 p.m. at
7  night, but they also have members of the house who
8  are part of the DOC system.  So if the Court were
9  to impose stricter curfews so that would serve
10 Mr. Ruhl on a very tight leash.  The house will
11 assist in that regard and honor those curfews as
12 well.
13     Mr. Ruhl, I may have mentioned this already,
14 made an appointment with the primary care physician
15 for tomorrow.  He is clinically diagnosed with
16 ADHD.  He has done some research on his own about
17 treatment and plans to pursue a treatment by use of
18 Adderall which he also thinks will assist him in
19 focusing on his sobriety and never losing that
20 focus.
21     He's lined up work.  It's not set in stone
22 yet, but it looks like he has a job making snow at
23 Smugglers' Notch which he would agree to stick with
24 and not jump from job to job through the season.
25 So with employment lined up through winter season,

1   a place to live that has much more significant
2   oversight than what he had before, much more
3   accountability, and a regimen of medicine that will
4   assist in behaviors that have gotten in the way of
5   his success, we think he is worth taking a chance
6   here and I think that's why probation agrees with
7   us as well as Christine Hayner at the Howard
8   Center.
9         I don't know what the prosecutor's position is
10  on it, what Joe Perella's position is, but we hope
11  that Your Honor will consider that in giving
12  Mr. Ruhl another chance.  And I know he was up all
13  night worried about this; he would like to address
14  the Court personally.
15        THE COURT:  Okay.  Mr. Ruhl, tell me why you
16  think this is a good idea.
17        THE WITNESS:  Well, because I have given it my
18  all before and -- having trouble putting the words
19  together, but I know that we've been here before,
20  we've been in this position before, but I have
21  not -- and I'm sorry for that.  But I haven't --
22  I'm sorry that I didn't give it my all and I wasn't
23  honest a couple of times.
24        THE COURT:  Why, why were you not giving it
25  your all?

1  THE WITNESS:  I don't know.
2  THE COURT:  Because there were various times
3  in which --
4  THE WITNESS:  I know.
5  THE COURT:  -- you were doing very well.
6  THE WITNESS:  Sometimes I did give it my all
7  and other times I kind of lost sight, lost my
8  focus.  And I could have done better.
9  THE COURT:  And you think that being in a
10  sober house with a number of other people is going
11  to be helpful --
12  THE WITNESS:  I do.
13  THE COURT:  -- at this point?
14  And why do you think that?
15  THE WITNESS:  Because it always -- it seems
16  like, well, it's hard to explain.  It's like it was
17  I'm always focusing on sobriety and that's what we
18  do there.  We come back, have a meeting at night,
19  meeting in the morning.  And I think it will work.
20  It will work.  I won't let you down this time.
21  THE COURT:  Okay.  Mr. Perella, what's your
22  response?
23  MR. PERELLA:  Your Honor, the government
24  defers to you.  If Mr. Ruhl has convinced you that
25  he's going to try harder to comply with his

1  conditions, try harder to abide by the drug court
2  expectations, then the government does not oppose
3  release.
4  　　　　But a few points, Your Honor, a couple of
5  points.  One of the things, frustrating parts of
6  Mr. Ruhl's tenure at drug court, I think it feels
7  like the drug court team put more effort into his
8  recovery than Mr. Ruhl does.  And that has to stop.
9  I think a basic rule of recovery, the book that,
10 well, stupid things that mess up my recovery is if
11 you put less effort in your recovery than you do in
12 your addiction, and Mr. Ruhl has to turn this
13 around.
14 　　　　Finally, Your Honor, it struck me last week in
15 drug court where Jed said that he didn't really
16 feel -- I'm paraphrasing, I may have it slightly
17 wrong.  But he said something to the effect of that
18 he wasn't that disappointed in himself.  And I
19 think he's setting to lower the standard for
20 himself.  We all believe he has great potential and
21 he shouldn't be complacent that he's come a little
22 bit and that's good enough.  Because he can go a
23 lot further when he puts his mind to it, as we have
24 seen for short periods of his drug court
25 participation.

1          Thank you, Your Honor.
2          THE COURT:  Well, let me describe my reaction,
3     Mr. Ruhl.  You are very difficult to understand in
4     drug court.  Because number one, you have a lot of
5     sophistication, you have intelligence, you have a
6     lot to offer the community and, more importantly,
7     you have a lot to offer yourself.
8          And so everybody -- I will speak for everybody
9     here -- sees so much potential in you.  I mean,
10    they see potential in drug court.  You could easily
11    complete drug court without any difficulties if you
12    made a decision to commit yourself to finish drug
13    court successfully.  No question you have that
14    ability.
15         And people look at your slips, and I will
16    speak for myself, as just, you know, what a
17    mistake, what a digression from progress.  I mean,
18    you have work skills, you have social skills.  You
19    can do just extraordinarily well if you put your
20    mind to it.
21         So then you come in last week and said, well,
22    you know you used cocaine, somebody, this thing
23    overnight because they have trouble getting back to
24    their house.  And then they take out a line of
25    cocaine.  Well, of course, you use it.  And you

1    describe your reaction to being confronted with a
2    potential of using cocaine, and so this is just
3    sort of a normal thing.
4         Well, it's not a normal thing.  You are in
5    drug court.  You are under federal supervision and
6    that's a clear violation of everything that drug
7    court is about and everything that the federal
8    government is about in terms of supervising you in
9    your recovery.
10        THE WITNESS:  (Inaudible.)
11        THE COURT:  Now, I hear that you're -- that
12   you want to try this and I agree completely.  I
13   also heard that you look around and you see other
14   people who have graduated from drug court that
15   started with you, why are you here after, you know,
16   so much time?  All it takes is commitment.  And
17   maybe it is ADHD.  Maybe it is just a lack of real
18   understanding about addiction or maybe it's just a
19   lack of commitment to recovery.  I mean, I don't
20   know that.
21        But I am going to give you this option to try
22   to get through it.  I mean, how much are you into
23   the second phase?  What is your time?
24        THE WITNESS:  Four weeks, I believe.
25        THE COURT:  I mean, you have been in drug

1     court for a year.  And all of those slides, it
2     just -- it can't happen anymore.
3         So no question that I felt last week that that
4     was it, that you're just never going to make it.
5     This might be an option.  You are surrounded with
6     people who are engaged actively in recovery with no
7     tolerance.  You know, this could be what you need.
8         All right.  So I'm going to release you under
9     the terms and conditions as follows:  That you
10    report to this program -- the name of the program
11    again, Ms. Barth, is what?
12        MS. BARTH:  First Step Recovery.
13        THE COURT:  First Step Recovery.  And if you
14    participate fully in that program, that you sign a
15    waiver so that the probation office can speak with
16    people at Recovery.  And that you abide by all the
17    terms and conditions of participation in that
18    program.  So that if you violate any of those terms
19    and conditions, for instance, if you use or if you
20    violate any other conditions and are terminated --
21    you would be terminated from that program, then you
22    would be coming right back into court at this
23    point.
24        On the other hand, I will say to you that
25    everyone on the team is really hoping that you

1   succeed.  And, frankly, that's true of me as well.
2   I mean, you've got people who are very committed to
3   doing things to help you, but more than that they
4   are really rooting for you.  And then when you fail
5   like you did last week, I mean, that's a slap at
6   them, it's a slap at the program, and it's really
7   discouraging.
8       So I really hope that you use this to turn
9   things around.
10      All right.  And is your camp all locked up?
11          THE WITNESS:  Yes, winterized.
12          THE COURT:  All right.  So tonight you go to
13  this program.  Let's start again.  And my guess is
14  that you probably have, what, another eight months?
15  Something like that.
16          THE WITNESS:  Yes, it will be almost to the
17  day when I graduate, May 15th.
18          THE COURT:  May 15th, all right.  Let's see.
19          THE WITNESS:  Okay.  Thank you, Your Honor.
20          THE COURT:  Okay.
21          MR. PERELLA:  Best wishes, you can do that.
22          THE WITNESS:  Thank you, Joe.
23          (The Violation Hearing was concluded at
24  approximately 2:00 p.m.)
25

CERTIFICATE

I, Deborah J. Slinn, Registered Professional Reporter and Certified Shorthand Reporter, certify:

That the foregoing proceedings were reported stenographically by me at the time and place herein set forth;

That the foregoing is a true and correct transcript of my shorthand notes so taken to the best of my ability;

That I am not a relative or employee of any attorney of the parties nor financially interested in the action.

The certification of this transcript does not apply to any reproduction of the same by any means unless under the direct control and/or direction of the certifying reporter.

*[Signature: Deborah J. Slinn]*

_____

Deborah J. Slinn
Notary Commission No. 0011571

My commission expires January 31, 2023.