UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT


UNITED STATES OF AMERICA    *
                            *
              V             *
                            *
JED RUHL                    * CRIMINAL FILE NO. 19-66




ARRAIGNMENT & PLEA TO INFORMATION
Monday, September 9, 2019
Burlington, Vermont




BEFORE:

     THE HONORABLE WILLIAM K. SESSIONS III
        Senior District Judge


APPEARANCES:

     JOSEPH R. PERELLA, ESQ., Assistant United States
        Attorney, Federal Building, Burlington, Vermont;
        Attorney for the United States

     STEVEN L. BARTH, ESQ., Assistant Federal Public
        Defender, Office of the Federal Public Defender,
        District of Vermont, 95 Pine Street, Suite
        150, Burlington, Vermont; Attorney for the
        Defendant




ANNE NICHOLS PIERCE
United States District Court Reporter (ret'd.)
*fortherecordinvermont@gmail.com*

```
1    MONDAY, SEPTEMBER 9, 2019
2    (The following was held in open court at 11:33 a.m.)
3              COURTROOM DEPUTY:  This is case number 19-66,
4    United States of America versus Jeremiah Ruhl.  The
5    government is present through Assistant United States
6    Attorney Joseph Perella.  The defendant is present in
7    the courtroom with his attorney, Steven Barth.
8         The matter before the Court is an arraignment and
9    plea to an information
10             THE COURT:  All right.  Mr. Barth, my
11   understanding is that your client wishes to waive his
12   right to proceed by indictment on Count 1 and plead
13   guilty to Count 1 together with three counts of
14   migratory bird violations.  Is that correct?
15             MR. BARTH:  Correct.  All of those in the
16   superseding information.
17             THE COURT:  Yes.
18        All right.  Mr. Ruhl, I am going to ask you a whole
19   series of questions.  If you don't understand anything
20   that I ask, let me know; I would be glad to explain.
21   And, in addition, if you wish to speak with Mr. Barth,
22   let me know that.  I will provide you an opportunity to
23   speak with him.  Do you understand that?
24             THE DEFENDANT:  Yes, I do, your Honor.
25             THE COURT:  I am also going to ask that you be
```

1    placed under oath and would advise you if answer any

2    questions falsely, you could be prosecuted for perjury

3    or false swearing.  Do you understand that?

4                THE DEFENDANT:  Yes, I do, your Honor.

5                THE COURT:  Okay.  Would you place Mr. Ruhl

6    under oath, please.

7                (The defendant was sworn.)

8                THE COURT:  Would you state your full name.

9                THE DEFENDANT:  Jeremiah Ruhl.

10               THE COURT:  And how old are you?

11               THE DEFENDANT:  44.

12               THE COURT:  How far did you go through school?

13               THE DEFENDANT:  I graduated Colchester High

14   School and took several years of college for a 15-year

15   period.

16               THE COURT:  And have you been hospitalized for

17   drug or alcohol treatment?

18               THE DEFENDANT:  I have been to several

19   in-house rehabs.

20               THE COURT:  You were in Valley Vista for two

21   weeks?

22               THE DEFENDANT:  Yes.

23               THE COURT:  Are you receiving any treatment as

24   a result of that placement?

25               THE DEFENDANT:  Yes.

1          THE COURT:  What's the treatment?

2          THE DEFENDANT:  I am going to outpatient

3     treatment three days a week.

4          THE COURT:  Okay.  But are you taking any

5     medication?

6          THE DEFENDANT:  No, your Honor.

7          THE COURT:  All right.  Are you currently or

8     recently under the care of a physician or psychiatrist?

9          THE DEFENDANT:  Primary care doctor, yes, your

10    Honor.

11         THE COURT:  Okay.  For any particular ailment?

12         THE DEFENDANT:  No.

13         THE COURT:  And have you taken any pills or

14    medication or consumed alcohol within the past 24 hours?

15         THE DEFENDANT:  No.

16         THE COURT:  Do you understand what's happening

17    today?

18         THE DEFENDANT:  Yes, I do.

19         THE COURT:  Do either counsel for the

20    defendant or government have any reason to believe that

21    Mr. Ruhl could not freely and voluntarily waive his

22    right to proceed by indictment and to proceed on the

23    information?

24         MR. BARTH:  No, your Honor.

25         MR. PERELLA:  No, your Honor.

1          THE COURT:  Have you received a copy of the

2   information?

3          THE DEFENDANT:  Yes, I have.

4          THE COURT:  Do you wish that I read the

5   information into the record or would you waive its

6   reading?

7          THE DEFENDANT:  I'll waive the reading.  We

8   have gone over it and I understand it.

9          THE COURT:  Okay.  Have you had an adequate

10  opportunity to go over the information and the charges

11  in the information with your lawyer?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Are you satisfied with the

14  representation he has provided?

15          THE DEFENDANT:  Yes, your Honor.

16          THE COURT:  Do you understand that in regard

17  to Count 1, which is a felony, that you have a right to

18  proceed by indictment of a grand jury but that you could

19  waive that right and to proceed on the information?

20          THE DEFENDANT:  Yes, I do.

21          THE COURT:  Do you understand that a grand

22  jury is made up of between 16 and 23 people, that at

23  least 12 grand jurors would have to find there's

24  probable cause to believe that you committed the offense

25  for which you have been charged?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Do you wish to waive your right to

3    proceed by indictment and to proceed on the information?

4          THE DEFENDANT:  Yes, I do.

5          THE COURT:  And are you doing that freely and

6    voluntarily?

7          THE DEFENDANT:  Yes.

8          THE COURT:  All right.  The Court is in

9    receipt of a waiver form which has been signed by the

10   defendant.  Is that your signature --

11         THE DEFENDANT:  Yes.

12         THE COURT:  -- on the waiver form?

13      And prior to signing the agreement, did you read it

14   and go over this form with Mr. Barth?

15         THE DEFENDANT:  Yes, I did.

16         THE COURT:  And are you waiving your right to

17   proceed by indictment freely and voluntarily?

18         THE DEFENDANT:  Yes, I am, your Honor.

19         THE COURT:  All right.  The Court will execute

20   the form as well, find that the waiver has been

21   exercised freely and voluntarily, and will accept it.

22      Now, has Mr. Barth gone over with you the nature

23   and the elements of each one of these offenses and gone

24   over with you any defenses that you may have?

25         THE DEFENDANT:  Yes, your Honor.

1           THE COURT:  All right.  And I am going to go

2    through each of the four counts with you at this point.

3           First, do you understand the government would have

4    to prove beyond a reasonable doubt in Count 1 that

5    between in or about November 15, 2015, and December of

6    2016, in Vermont, you knowingly possessed a firearm in

7    and affecting interstate commerce after having been

8    convicted of a crime punishable by a term of

9    imprisonment exceeding one year, in other words, a

10   felony, and knowing that you had been convicted of such

11   a crime?

12           THE DEFENDANT:  Yes, your Honor.

13           THE COURT:  And you understand the maximum

14   penalty for Count 1, and that's a period of imprisonment

15   of not more than 10 years, a fine of not more than

16   $250,000, a term of supervised release of not more than

17   three years, together with a special assessment of $100?

18           THE DEFENDANT:  Yes, your Honor.

19           THE COURT:  Do you understand that?

20           And do you understand the Court has the power if it

21   deems it appropriate to order that you pay for all costs

22   of imprisonment, probation or supervised release?

23           THE DEFENDANT:  Yes, your Honor.

24           THE COURT:  And as to Count 1, how do you wish

25   to plead, guilty or not guilty?

```
1              THE DEFENDANT:  Guilty.

2              THE COURT:  All right.  Now, in regard to

3    Counts 2, 3 and 4, let me go each -- go through each one

4    of those.  It's a violation of the migratory bird act.

5         In Count 2, the government would have to prove

6    beyond a reasonable doubt that on or about March 18,

7    2016, in Vermont, you hunted, killed a migratory bird,

8    that's an American crow, you were not permitted to do so

9    because you had no license, your license had been

10   revoked, and the crow is protected by the migratory bird

11   act.  Do you understand that?

12             THE DEFENDANT:  Yes, I do.

13             THE COURT:  In regard to Count 3, the

14   government would have to prove beyond a reasonable doubt

15   that on or about April 18, 2016, in Vermont, you did

16   not -- you did possess a migratory bird, that's a turkey

17   vulture, in violation of the migratory bird act.  Do you

18   understand that?

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  And in Count 4, the government

21   would have to prove beyond a reasonable doubt that on or

22   about October 19, 2016, in Vermont, you hunted, killed

23   and took a migratory bird, that's an American woodcock,

24   while not being permitted to do so by the State of

25   Vermont because your license had been revoked.  And this
```

1    also was in violation of the migratory bird act.  Do you

2    understand that?

3                    THE DEFENDANT:  Yes, I do.

4                    THE COURT:  And for each of these offenses, do

5    you understand the maximum penalty:  It's a period of

6    imprisonment of not more than six months, a period of

7    probation of not more than --

8                    MR. PERELLA:  Five.

9                    THE COURT:  Five years, right.  Okay.

10        A fine of not more than $5,000, together with a $10

11    special assessment?  Do you understand that?

12                    THE DEFENDANT:  Yes, I do, your Honor.

13                    THE COURT:  And as to Counts 2, 3 and 4, how

14    do you wish to plead, guilty or not guilty?

15                    THE DEFENDANT:  Guilty.

16                    THE COURT:  All right.  I am going to explain

17    to you all of your constitutional rights together with

18    the fact that you'd be waiving those rights by pleading

19    guilty today.  I ask that you listen carefully to the

20    rights as I explain them, because at the end I am going

21    to ask that you acknowledge understanding those rights,

22    together with the fact that you'd be waiving those

23    rights by pleading guilty today.  Do you understand

24    that?

25                    THE DEFENDANT:  Yes.

1          THE COURT:  Do you understand that you have a

2    right to plead not guilty and to persist in that plea;

3    that you would then have the right to a trial by jury;

4    at trial you would be presumed to be innocent and the

5    government would have to prove your guilt beyond a

6    reasonable doubt; you'd have the right to the assistance

7    of counsel for your defense, the right to see and hear

8    all witnesses, have them cross examined in your defense;

9    the right on your own part to decline to testify unless

10   you voluntarily chose to do so; the right to the

11   issuance of subpoenas to require the attendance of

12   witnesses to testify in your defense; the right to

13   testify and the right to present evidence?  Do you

14   understand those rights?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Do you understand if you chose not

17   to testify or put on any evidence, those facts could not

18   be used against you in any way?

19          THE DEFENDANT:  Yes, I do.

20          THE COURT:  And do you understand that if you

21   plead guilty and I accept your plea, that you'd be

22   waiving your right to a trial and the other rights I

23   have just explained, there will be no trial, I will

24   accept your admission and order a presentence report,

25   impose sentence after considering the presentence

1    report?

2            THE DEFENDANT:  Yes, your Honor.

3            THE COURT:  And do you understand that you'd

4    be waiving your right against self-incrimination and

5    your right to appeal the merits of your case?

6            THE DEFENDANT:  Yes, I do.

7            THE COURT:  Has anyone threatened you or

8    anyone else or forced you in any way to plead guilty

9    today?

10           THE DEFENDANT:  No.

11           THE COURT:  All right.  The government is in

12   receipt of a plea agreement which bears your signatures

13   on page eight.  Is that your signature on the last page?

14           THE DEFENDANT:  Yes, it is, your Honor.

15           THE COURT:  And prior to signing this

16   agreement, did you read it?

17           THE DEFENDANT:  Yes.

18           THE COURT:  Did you go over the agreement with

19   Mr. Barth?

20           THE DEFENDANT:  Yes, I did.

21           THE COURT:  And did you understand it?

22           THE DEFENDANT:  I did.

23           THE COURT:  All right.  Let me go through the

24   high points of the agreement.

25        First, you'd waive your right to proceed by

1    indictment in regard to Count 1 and proceed on the

2    information, and according to this agreement you would

3    enter guilty pleas to Counts 1, 2, 3 and 4.  The maximum

4    penalty I have described to you already.  You have

5    agreed not to commit any other crimes, whether federal,

6    state or local.  You have agreed to pay the $100 special

7    assessment in regard to Count 1 and the $10 assessments

8    in regards to Counts 2, 3 and 4, for a total of 130

9    months *[sic]*, and that in response, if you abided by the

10   terms of this agreement, the government would do the

11   following for you:

12        They would move to dismiss the indictment.  They

13   will not charge you with any other offenses known by

14   them as of the date of the signing of this agreement

15   which relate to your possession of firearms or your

16   unlawful taking and possession of wildlife.  They would

17   move to refer you to the Burlington federal drug court,

18   postpone sentencing, to participate fully in that

19   program.

20        In addition, they would recommend that you receive

21   credit for acceptance of responsibility provided that

22   you are truthful and honest with the probation officer

23   during the presentence process and no additional

24   information comes to the attention of the government

25   which bears on the question of acceptance of

1    responsibility.  If your final offense level is 16 or

2    above, they will recommend a third point off.  Do you

3    understand that?

4                THE DEFENDANT:  Yes, I do, your Honor.

5                THE COURT:  In addition, there's a recitation

6    of facts in the plea agreement, and that is in paragraph

7    four, and my understanding is by signing this agreement,

8    you agree to the facts as accurate in Count 4?

9                THE DEFENDANT:  Yes, I do.

10                THE COURT:  Is that correct?

11                THE DEFENDANT:  Um hum.

12                THE COURT:  Now, in addition, the government

13    has indicated that they have not made any promises or

14    predictions as to what sentence you are likely to

15    receive, and that also, if, in their own discretion, the

16    government determines that you violated this agreement,

17    they reserve the right to withdraw from the agreement

18    and prosecute you for any offenses they deem appropriate

19    or, alternatively, withdraw from their obligations under

20    the agreement while requiring you to maintain your

21    guilty plea.  Do you understand that?

22                THE DEFENDANT:  Yes, I do.

23                THE COURT:  All right.  In sum and substance,

24    those are the major parts of the agreement.  Is that

25    consistent with your understanding?

1           THE DEFENDANT:  It is, your Honor.

2           THE COURT:  Have there been any other promises

3    or representations made by anyone that's induced you to

4    plead guilty today?

5           THE DEFENDANT:  No.

6           THE COURT:  Have you gone over the guidelines

7    with Mr. Barth?

8           THE DEFENDANT:  Yes, I have.

9           THE COURT:  Has anyone made any promises or

10   predictions as to what sentence you are likely to

11   receive?

12          THE DEFENDANT:  No.

13          THE COURT:  Do you understand that any

14   promises or predictions as to what sentence you are

15   likely to receive are not binding upon the Court?  Based

16   upon your guilty plea, I could impose a sentence up to

17   the maximum permitted by law and that you would not have

18   the right to withdraw your plea if those predictions

19   proved to be inaccurate?

20          THE DEFENDANT:  Yes, I do.

21          THE COURT:  And do you understand that in some

22   circumstances the Court has the power to impose a

23   sentence that is more severe or less severe than the

24   guidelines called for, and if I were to impose a

25   sentence that was more severe, you still could not

1    withdraw your guilty plea?

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  Do you understand the guidelines

4    are now advisory in nature, and the Court will consider

5    all of the factors under 18 USC, section 3553(a) in

6    determining what is the appropriate sentence?

7              THE DEFENDANT:  Yes.

8              THE COURT:  And finally, in the federal

9    system, parole is abolished.  If you are sentenced to

10   prison, you would not be released on parole.  Do you

11   understand that?

12             THE DEFENDANT:  Yes, I do.

13             THE COURT:  I'm going to ask Mr. Perella to

14   provide a factual basis for the plea, to determine what

15   happened here.  I'd ask that you listen carefully to his

16   explanation of the facts because at the end I am going

17   to ask whether those facts are accurate.

18             THE DEFENDANT:  Yes.

19             THE COURT:  All right?  Okay, Mr. Perella.

20             MR. PERELLA:  Yes, your Honor.  And these are

21   facts stipulated to in paragraph four of the plea

22   agreement.

23        As to Count 1:  From in or about November 2015 to

24   in or about December 2016, Jeremiah Ruhl knowingly

25   possessed a Stevens Savage Model 947A .410 shotgun,

1     serial number E404943.  During this time period, the
2     defendant fired this shotgun multiple times to hunt
3     birds and rabbits in Vermont.  At times the defendant
4     stored the shotgun at his residence in Colchester,
5     Vermont.
6          On August 1st, 2007, the defendant was convicted of
7     a crime punishable by a term of imprisonment exceeding
8     one year, that is forgery, in the district court of
9     Vermont, in the Chittenden Circuit, docket number
10    2924-3-07.
11         When Jeremiah Ruhl possessed the Stevens shotgun
12    from November 2015 to December of 2016, he knew he was
13    convicted of a crime punishable by a term of
14    imprisonment exceeding one year and was thus prohibited
15    from possessing this shotgun.  And the Stevens shotgun
16    was manufactured outside of the state of Vermont.
17         As to Count 2:  On or about March 18th, 2016, in
18    Chittenden County, Vermont, the defendant shot and
19    killed an American crow, Latin name *Corvus*
20    *brachyrhynchos*, with a .22 rifle.  At the time Jeremiah
21    Ruhl did not possess a valid hunting license from the
22    state of Vermont.
23         As America -- as a matter of law, the American crow
24    is a migratory bird regulated under the Migratory Bird
25    Treaty Act.

1          Count 3:  On or about April 18th, 2016, in

2     Chittenden County, the defendant, Jeremiah Ruhl, killed

3     and then possessed a turkey vulture, Latin name

4     *Cathartes aura*.  Jeremiah Ruhl had no permit to possess

5     this turkey vulture at that time, and as a matter of

6     law, a turkey vulture is also a migratory bird regulated

7     under the Migratory Bird Treaty Act.

8          Finally, Count 4:  On or about October 19th, 2016,

9     in Chittenden County, defendant Jeremiah Ruhl shot and

10    killed an American woodcock, Latin name *Scolopax minor*,

11    with the Stevens shotgun.

12         At the time Jeremiah Ruhl did not possess a valid

13    hunting license from the state of Vermont, and as a

14    matter of law, the American woodcock is a migratory bird

15    regulated under the Migratory Bird Treaty Act.

16              THE COURT:  Is that what happened, Mr. Ruhl?

17              THE DEFENDANT:  Yes, your Honor.

18              THE COURT:  Could the government prove those

19    facts, Mr. Barth?

20              MR. BARTH:  Yes, your Honor.

21              THE COURT:  All right.  Since you acknowledge

22    that you are, in fact, guilty as charged, since you know

23    your right to a trial, the maximum possible sentences,

24    since you are voluntarily pleading guilty, I will accept

25    your guilty pleas.  Do you still wish to plead guilty at

1     this point?

2                    THE DEFENDANT:  Yes, your Honor.

3                    THE COURT:  And are you pleading guilty freely

4     and voluntarily with a full understanding of the nature

5     of the charges and the rights that you are waiving?

6                    THE DEFENDANT:  Yes.

7                    THE COURT:  Okay.  You can be seated.

8           The Court, having questioned the defendant and

9     counsel on the offer of his plea, the defendant and

10    counsel having advised the Court they have conferred

11    concerning the offered plea and all aspects of the

12    charges against the defendant, any defenses he may have,

13    the Court having observed the defendant making his

14    answers, his demeanor and manner while answering

15    questions, his apparent intelligence, and his attitude,

16    the Court having observed the defendant does not appear

17    to be under the influence of any medication, drug or

18    other substance which may affect his judgment, the Court

19    hereby finds that the offer of the plea of guilty has a

20    factual basis, is free of any coercive influence of any

21    kind, is competently and voluntarily made with full

22    knowledge of the charges against him and the

23    consequences of his pleas, there have been no promises

24    of any kind made, apart from the statements set forth in

25    the plea agreement, and no threats or coercion have been

1    exerted upon him in any manner.

2         The Court will accept the guilty plea, defer

3    acceptance of the plea agreement, order a presentence

4    report.

5         All right.  We are not going to schedule a

6    sentencing date at this point in light of the fact Mr.

7    Ruhl may be participating in the Burlington drug court.

8    So we will postpone actually scheduling the date for

9    sentencing.

10        So the Court has received a violation report from

11   the probation officer.  The violation report alleges

12   that Mr. Ruhl has used cocaine on two separate

13   occasions.

14        Have you received a copy of that report, Mr. Barth?

15             MR. BARTH:  I received a copy of it this

16   morning.  I had been -- word had gotten to me about it.

17   Mr. Ruhl and I spoke about it last week, so I am aware

18   of it, yes.

19             THE COURT:  All right.  Does he admit or deny

20   that he has been in violation of his release --

21             MR. BARTH:  He admits that.

22             THE COURT:  -- terms?

23             MR. BARTH:  He used cocaine on two occasions.

24             THE COURT:  All right.  Is that correct?

25             THE DEFENDANT:  Yes, it is, your Honor.

1       THE COURT:  All right.  Mr. Ruhl, so tell me

2   what happened here.

3       THE DEFENDANT:  I suppose I didn't take the

4   addiction problem I have as seriously as I should have,

5   and it caught me by surprise, and I used cocaine.

6       THE COURT:  What prompted you to use cocaine?

7   You have attended Valley Vista?

8       THE DEFENDANT:  Yes, your Honor.

9       THE COURT:  You successfully completed Valley

10  Vista?

11      THE DEFENDANT:  Yes.

12      THE COURT:  I have no doubt that Valley Vista

13  taught you various mechanisms by which you could deflect

14  use of drugs.  What happened here?

15      THE DEFENDANT:  They did, your Honor.  I

16  suppose -- well, there was a couple of triggers that I

17  hadn't thought about because I didn't think that I would

18  be in that situation.  One of them was actually seeing

19  the drug in front of me, and the other one was just

20  stress related, I guess.  And that's why I --

21      THE COURT:  So seeing the drug in front of you

22  prompted you to use it?

23      THE DEFENDANT:  It did, your Honor, yes.

24      THE COURT:  And you turned to drugs in

25  relation to stress in your life?

1        THE DEFENDANT:  Yes, I did.

2        THE COURT:  So how are you going to deal with

3   this in the future?

4        THE DEFENDANT:  We're discussing that in my

5   classes now, and I -- or as far as seeing it in front of

6   me, I avoid people and places where the drug might be.

7   As far as stress goes, I am just trying to work through

8   the stressful situation now.  It's of what's currently

9   going on in my life.

10       THE COURT:  Is the treatment you are receiving

11   related both to your drug use but also to therapeutic

12   concerns that may arise generally out of your mental

13   health issue?

14       THE DEFENDANT:  It is.  We're dealing with --

15   or teaching me to deal with stress that arises, that I

16   suppose most people can deal with other ways, but for a

17   long time I have dealt with it with drugs.  And so it's

18   a behavior that I am trying to curb.

19       THE COURT:  All right.  Well, I mean,

20   obviously it's a pretty grave concern that you used

21   drugs on really the night or just shortly before you are

22   going to be changing a plea on a felony charge in

23   federal court.  That shows a real tremendous lapse in

24   judgment.  But there are signs, positive signs -- I want

25   to tell you that having been on the bench for many

1    years, I look really closely at people's honesty and are

2    they honest in really assessing the scope of their

3    illness, of their addiction, in particular, or is this

4    disregarded or excuses made.  And the fact is, what you

5    have just said strikes me as very honest, that you are

6    now recognizing that you have got a real significant

7    addiction problem.

8        And then the second thing that I really look to is

9    how honest you are with other people who are trying to

10   help you and, in particular, probation officers.

11   Because the probation officer is -- their job, number

12   one, is try to help people get through this process

13   constructively so that they can deal with their

14   addiction in a socially positive way.  And you have, you

15   know, shown signs of, frankly, honesty.  There's no

16   urine sample that came back.  It's you -- you went to

17   your probation officer, at least in the second occasion,

18   in particular, and were honest.

19       All right, so I am not going to violate you at this

20   particular point.  Place you -- put you back on the same

21   terms and conditions.  I expect to see you on Thursday

22   at the Burlington drug court, but I want to make it

23   pretty clear -- real clear that slippage is not just

24   slippage.  It's another federal crime.  If you use drugs

25   while you are under federal supervision, you are

1    committing a federal offense under the supervision of a

2    federal officer, and as a result, there are consequences

3    to that.

4                    THE DEFENDANT:  Yes.

5                    THE COURT:  So from this point forward, I

6    don't anticipate that you will commit any more federal

7    offenses, that is using drugs while under supervision.

8                    THE DEFENDANT:  Yes, your Honor.

9                    THE COURT:  Okay.  All right.  Anything else?

10   Okay.  Thank you.

11                   MR. BARTH:  Thank you.

12                   MR. PERELLA:  Thank you, your Honor.

13                   (Court was in recess at 12:00 p.m.)

14                        *** ** ***

15

16

17

18                   C E R T I F I C A T I O N

19       I certify that the foregoing is a correct
     transcript from the record of proceedings in the
20   above-entitled matter.

21

22   April 12, 2022                _____
     Date                          Anne Nichols Pierce
23

24

25